## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOSELINE DOTEL, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>       v.<br><br>COOPERVISION, INC.; ALCON LABORATORIES, INC; BAUSCH & LOMB INCORPORATED; JOHNSON & JOHNSON VISION CARE, INC.; and ABB/CON-CISE OPTICAL GROUP LLC (a/k/a ABB OPTICAL GROUP),<br><br>            Defendants. | No.<br><br>ANTITRUST CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, by her attorneys, on behalf of herself and all others similarly situated on behalf of himself and all others similarly situated, makes the following allegations based on the investigation of counsel and based upon information and belief, except as to those allegations specifically pertaining to himself and her counsel, which are based on personal knowledge.

### NATURE OF ACTION

1.     This lawsuit arises from a scheme among four manufacturers of Contact Lenses and the largest distributor of Contact Lenses in the United States whereby they eliminate discounts among retailers of Contact Lenses and artificially fix, raise, maintain and/or stabilize the prices charged to consumers for Contact Lenses.

2.     Plaintiff seeks to represent herself and all others similarly situated (the "Classes"). The Class consists of all persons in the United States who indirectly purchased Contact Lenses sold by Defendants CooperVision, Inc. ("CooperVision"), Alcon Laboratories, Inc. ("Alcon"), Bausch & Lomb Incorporated ("B&L"), and Johnson & Johnson Vision Care, Inc. ("J&J") (collectively referred to as the "Manufacturer Defendants"), or any current or former subsidiary

1

or affiliate thereof, or any co-conspirator, that was subject to Price Floor Policies[1] during the period from and including June 1, 2013 through such time as the anticompetitive effects of Defendants' unlawful conduct cease (the "Class Period").

3.      Plaintiff asserts that the Manufacturer Defendants, along with Defendant ABB/Con-Cise Optical Group LLC (a/k/a ABB Optical Group) ("ABB") (together with the Manufacturer Defendants, the "Defendants"), and unnamed co-conspirators, engaged in a scheme to fix, raise, maintain and/or stabilize prices of Contact Lenses by imposing Price Floor Policies ("PFPs").

4.      As of mid-2014, nearly 40 million Americans wore Contact Lenses, costing a total of $4.2 billion annually.[2] Today, the Manufacturer Defendants dominate and collectively control over 97% of the Contact Lens market in the United States.  As an example, Defendant ABB is the largest distributor of Contact Lenses in the United States and services more than two-thirds of independent eye care professionals ("ECPs").

5.      The PFPs set a minimum price for which a reseller can advertise or sell a particular line of Contact Lenses.  Although retailers may offer discounts pursuant to the PFPs, the price of lenses after any such discount must not fall below the established price floor.  If retailers violate a PFP by advertising or selling Contact Lenses below the set floor price, Defendants have cautioned that they "will cease to supply" the retailer with those lenses.  In an

---

[1] Price Floor Policies set a minimum price for which a reseller can advertise or sell a particular line of Contact Lenses.

[2] American Antitrust Institute, Letter to the FTC and DOJ (Oct. 24, 2014) at 2 (citing Statement of R. Joe Zeidner, General Counsel, 1-800 CONTACTS, Hearing Before the S. Comm. on the Judiciary Subcomm. on Antitrust, Competition Policy and Consumer Rights 1 (July 30, 2014)).

attempt to evade antitrust scrutiny, the Manufacturing Defendants nicknamed the PFPs "*Unilateral* Pricing Policies."

6.      In June 2013, Alcon implemented the first PFP. Shortly thereafter, the other Manufacturer Defendants followed suit, implementing nearly identical PFPs.

7.      The Manufacturer Defendants' objective in implementing their PFPs was to stifle price competition between independent eye care professional retailers and big-box stores (*i.e.,* Wal-Mart), internet retailers (*i.e.*, 1-800 CONTACTS), and warehouse clubs (*i.e.*, Costco), that, on average, charge approximately 30% less for the same Contact Lenses sold by independent eye care professional retailers. (*See* Figure 3 below).

8.      Acting on behalf of ECPs, ABB was instrumental in facilitating the conspiracy among the Manufacturer Defendants.  ABB acted as the "hub" of a "hub-and-spoke" conspiracy[3] to shift the entire industry to PFP contracts for the benefit of its eye care professional customers. Before the first PFP was put into effect, ABB itself admitted that it was working with the Manufacturer Defendants to shift industry practices.   In February 2013, ABB's founder and CEO, Angel Alvarez, stated that ABB focused on being "aligned with manufacturers." Subsequently, Alvarez confirmed ABB's participation in the conspiracy to create PFPs:

> ABB has been working closely with manufacturers to develop [PFPs], which we believe enable a better overall patient experience by supporting competitiveness of prescribing practitioners . . . Contact Lens fitters have always been and will always be a focus of our organization.  We do everything possible to help them succeed.

---

[3] In a "hub-and-spoke conspiracy", a central mastermind, or "hub", controls numerous "spokes", or secondary co-conspirators. These co-conspirators participate in independent transactions with the individual or group of individuals at the "hub" that collectively further a single, illegal enterprise. *United States v. Newton*, 326 F.3d 253, 255,  n.2 (1st Cir. 2003).

9.      Before the Manufacturer Defendants implemented their PFPs beginning in June 2013, Contact Lens purchasers enjoyed significant benefits from intrabrand price competition among Contact Lens retailers.[4]

10.     Since Defendants orchestrated an industry shift to PFPs, prices for Contact Lenses have increased dramatically.  For example, the price increases in some of J&J's lines of Contact Lenses range from approximately 75 to nearly 200%.  (*See* Figure 4 below).  J&J estimated that its PFPs would impact roughly 9.66 million Contact Lens consumers, approximately 69% of J&J Contact Lens consumers.

11.     On July 30, 2014, a hearing was held before the Subcommittee on Antitrust, Competition Policy and Consumer Rights of the U.S. Senate's Judiciary Committee, which was investigating the Defendants' business practices ("Senate Hearing").  At the Senate Hearing, testimony was given by numerous witnesses concerning the anticompetitive effects of the PFPs.

12.     More recently, consumers and industry participants have made numerous complaints to the Federal Trade Commission ("FTC") concerning the negative impact of PFPs. It has also been reported that other government antitrust enforcement authorities are investigating the PFPs. In an October 2014 letter, the American Antitrust Institute urged the FTC and the Department of Justice to investigate the imposition of the PFPs in light of the "evident harm to consumers."

13.     Anticompetitive policies that restrict price competition in the Contact Lens industry is not a new occurrence.  In the 1990s, a conspiracy existed between Contact Lens manufacturers and ECPs to curb the supply of Contact Lenses from moving through alternative

---

[4] *Id.*

sources of distribution (*i.e.*, mail-order houses).  In 1996, Attorneys General of 32 states, along with consumers, brought antitrust lawsuits against B&L, J&J, CIBA Vision (Alcon's predecessor), and the American Optometric Association ("AOA") (a trade association of ECPs) to challenge this anticompetitive conduct.  Following the denial of summary judgment to the defendants, the cases settled after several weeks of trial and the challenged practices ceased.

14.     In addition to U.S. investigations and litigation, Contact Lens manufacturers, including J&J, have been accused of restricting competition and stabilizing prices in other countries, including Germany and China.

15.     Defendants and their co-conspirators participated in a conspiracy to suppress and eliminate competition in the Contact Lens market by agreeing to eliminate discounting among Contact Lens retailers through the implementation of PFPs, as well as fixing, raising, stabilizing and/or maintaining the prices of Contact Lenses sold in the United States.  The conspiracy engaged in by the Defendants and their co-conspirators constitutes an unreasonable restraint of trade in violation of the Sherman Antitrust Act (15 U.S.C. § 1), state antitrust, unfair competition, and consumer protection laws and the common law of unjust enrichment.

16.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiff and the Classes paid artificially inflated prices for Contact Lenses during the Class Period.  Plaintiff and the Classes have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

17.     Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiff also alleges claims for actual and exemplary damages pursuant to

state antitrust, unfair competition, and consumer protection laws, as well as unjust enrichment. Furthermore, Plaintiff seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws and common law. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

18.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some of the Defendants; and (ii) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

19.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

20.     This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed Contact Lenses throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were

engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  The Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

21.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes.  The Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices in the United States for Contact Lenses, which conspiracy unreasonably restrained trade and adversely affected the market for Contact Lenses.

22.     The Defendants' conspiracy and unlawful conduct described herein adversely affected persons in the United States who indirectly purchased Contact Lenses manufactured by the Manufacturer Defendants, including Plaintiff and the members of the Classes.

### PARTIES

**A.**     **Plaintiff**

23.     Plaintiff Joseline Dotel is a New York resident who purchased Contact Lenses indirectly from one or more Defendants.

**B.**     **Defendants**

24.     Defendant Alcon is a Delaware corporation with its headquarters in Fort Worth, Texas and is owned by Novartis International AG, a Swiss multinational pharmaceutical

company based in Basel, Switzerland.  Alcon is in the business of making eye care products, including Contact Lenses.

25.     Defendant J&J is a Florida corporation with its headquarters in Jacksonville, Florida. J&J is in the business of making eye care products, including Contact Lenses.

26.     Defendant B&L is a New York corporation with its headquarters in Bridgewater, New Jersey and is now owned by Valeant Pharmaceuticals International, Inc.  B&L is in the business of making eye care products, including Contact Lenses.

27.     Defendant CooperVision is a United States company incorporated in New York and headquartered in Pleasanton, California. CooperVision is in the business of making eye care products, including Contact Lenses.

28.     Defendant ABB is a Delaware Corporation headquartered in Coral Springs, Florida.  ABB states on its website that it "is the nation's largest distributor of soft Contact Lenses," and that it "suppl[ies] more than two-thirds of [ECPs] in America with brand name Contact Lenses, high grade ophthalmic and fully customizable Gas Permeable Lenses."  ABB is a wholesale seller of Contact Lenses it purchases from the Manufacturer Defendants and services over 19,000 ECPs nationwide.

29.     Various persons that are not named as Defendants herein have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiff reserves the right to name some or all of these persons as Defendants at a later date. There are a finite number of co-conspirators and, upon information in belief their identities can be ascertained through Defendants' own records.

## AGENTS AND CO-CONSPIRATORS

30.    Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

31.    Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

32.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The Contact Lens Industry

### 1. Background of the Industry

33.    Contact Lenses were first introduced in the United States in 1987.  Today, they constitute approximately 90% of all eye ware sold in the United States.

34.    There are various types of Contact Lenses.  Contact Lenses may be worn and then disposed of daily, weekly or monthly. Additionally, Contact Lenses may be spherical, which contain a single refractive power, or specialty. A "specialty" refers to Contact Lenses that are crafted to address specific issues such as toric lenses (for people diagnosed with astigmatism),

and bifocal and multifocal Contact Lenses (for people diagnosed with presbyopia). For purposes of this Complaint, "Contact Lenses" refer to disposable contact lenses.

35.     Under FDA regulations, Contact Lenses are classified as Class II and Class III pharmaceutical devices. As such, consumers must obtain a prescription from an eye care professional to purchase Contact Lenses. Typically, after performing an eye exam and a Contact Lens fitting, an eye care professional will issue a prescription to the patient for a specific brand and type of Contact Lens.

36.     After obtaining a prescription, consumers can choose where to purchase the specified Contact Lenses (i.e., through their eye care professional, another independent eye care professional, or through other channels such as Wal-Mart, Costco, 1-800-CONTACTS or LensCrafters).

37.     Contact Lenses are a commoditized product, as publicly admitted by Jim Murphy ("Murphy"), Vice-President of Defendant Alcon.  Thus, according to a 2005 Report by the FTC, "the replacement lens a consumer purchases pursuant to a prescription that specifies a brand will be identical, regardless of where it is purchased." *The Strength of Competition In The Sale of Rx Contact Lenses: An FTC Study* (the "2005 FTC Report").

38.     Consumers' ability to freely choose their preferred retail channel was secured by the enactment of the Fairness to Contact Lens Consumers Act ("FCLCA") (15 U.S.C. §§ 7601 *et seq.*) in December 2003.  The FCLCA was enacted in response to complaints of prescriptions being withheld from patients. It requires ECPs to immediately provide patients with copies of their Contact Lens prescriptions so their method of purchase is uninhibited.

39.     Congress recognized that the consumers' ability to benefit from the FCLCA depended on intrabrand price competition by alternative retail options.  The purpose of the FCLCA, according to legislative history, was to:

> [P]romote[] *competition, consumer choice, and lower prices* by extending to Contact Lens wearers the same automatic right to copies of their own prescriptions and allows consumers to purchase Contact Lenses from the provider of their choice.

H.R. Rep. No. 108-318 (2003) (emphases added).

40.     In 2004, the Contact Lens Rule (16 C.F.R. Parts 315 and 456), issued by the FTC, further clarified the requirements under the FCLCA to allow patients control over their Contact Lens prescriptions, thereby "increas[ing] consumers' ability to shop around when buying Contact Lenses."

## 2.     Contact Lens Pricing and Retail Channels

41.     According to the 2005 FTC Report, Contact Lens manufacturers "distribute the largest share of lenses through independent ECPs and the smallest through the online/mail-order channel" and this remains the case today.  Figure 1 below illustrates Contact Lens sales to ECPs compared to other retail channels.

**Figure 1**



42.     Furthermore, as illustrated by Figure 2 below, a majority of prescriptions for Contact Lenses are filled by ECPs.

**Figure 2**



43.     The plethora of data unambiguously demonstrates that Contact Lenses were more expensive when purchased through ECPs prior to the implementation of the PFPs (as opposed to internet or big-box retailers).

44.     A March 2004 study by 1-800 CONTACTS, which was also published in a 2004 FTC report entitled *Possible Anticompetitive Barriers to E-Commerce: Contact Lenses* (the "2004 FTC Report"), shows that ECPs charged approximately 25 to over 28 percent more than mass merchants and internet retailers for the same exact Contact Lenses.  The results of the study are illustrated in Figure 3 below.

**Figure 3**

| Price Comparison by Channel by Product | | | | | | |
|---|---|---|---|---|---|---|
| Retailing Channels | | Focus Toric | | FreshLook | | Acuvue 2 |
| ECP | $ | 70.3 | $ | 45.1 | $ | 24.3 |
| *Independent Optometrists* | $ | 70.9 | $ | 46.7 | $ | 24.4 |
| *Ophthalmologists* | $ | 73.2 | $ | 46.5 | $ | 25.7 |
| *Optical Retail Chains* | $ | 66.7 | $ | 42.1 | $ | 22.9 |
| Non-ECP | $ | 56.1 | $ | 35.2 | $ | 19.0 |
| *1-800 Contacts* | $ | 59.0 | $ | 35.0 | $ | 20.0 |
| *Mass Merchandisers* | $ | 53.2 | $ | 35.4 | $ | 18.1 |
| Difference between ECP and Non ECP Retailers ($) | $ | 14.2 | $ | 9.9 | $ | 5.3 |
| Difference between ECP and Non ECP Retailers (%) | | 25% | | 28% | | 28% |

Source:  2004 FTC report "The Strength of Competition in the Sale of Rx Contact Lenses: An FTC Study."

45.     Similarly, a 2005 FTC study found that, on average, Contact Lenses are least expensive when purchased through wholesale clubs.[5] The study also found that Contact Lenses were approximately $15 less when purchased through internet retailers as opposed to offline retailers.

46.     The 2005 FTC study commended the success of the FCLCA's requirements, which have resulted in increased competition for Contact Lenses and lowered prices across the United States.

---

[5] On average, prices were approximately $30 less than ECPs.

47. ECPs took notice of the price competition from other retail channels. According to a July 2014 *Reuters* article, "[t]he online channel is beginning to garner considerable attention from [ECPs]. Many are seeing this channel as a threat to traditional stores . . . The pricing strategies on the Internet usually mean a much cheaper price than that found in physical stores." Diane Bartz, *U.S. Senate panel to look into price setting for contact lenses,* Reuters, Jul. 29, 2014 (internal quotations and citation omitted).

### 3. Defendants Unlawfully Stifled Competition by Colluding to Implement and Enforce Their Anticompetitive Price Floor Policies

48. In response to price competition from alternative retailers to ECPs, the Manufacturer Defendants implemented PFPs almost simultaneously.

49. Alcon announced its PFP in June 2013, initially applying it to its FAILIES TOTAL1® line of Contact Lenses. Alcon then expanded its PFP in January 2014 to its DAILIES® AquaComfort Plus® Multifocal and DAILIES® AquaComfort Plus® Toric Contact Lenses. Again, in June of 2014, Alcon extended its PFP policy to include AIR OPTIX® COLORS Contact Lenses.

50. In January 2014, a PFP was announced by Sauflon Pharmaceuticals ("Sauflon"), which was later acquired by CooperVision in August 2014, for its CLARITI family of Contact Lenses. In September 2014, CooperVision announced it would continue Souflon's PFPs.

51. Soon after Sauflon and Alcon's PFP announcements, in February of 2014, B&L implemented its PFP for its ULTRA™ brand of lenses.

52. Thereafter, in June of 2014, J&J implemented PFPs for all of its major Contact Lens brands, and simultaneously announced that it planned to *discontinue* all Contact Lens lines that were *not* subject to PFPs. J&J estimated that its PFPs would impact approximately 9.66 million Contact Lens wearers—roughly 69% of J&J Contact Lens consumers.

53.     J&J's Contact Lens brands subject to PFPs include:   1-Day ACUVUE® MOIST®, 1-DAY ACUVUE® MOIST® for ASTIGMATISM, 1-Day ACUVUE® TruEye®, ACUVUE® OASYS® with HYDRACLEAR®, ACUVUE® OASYS® for ASTIGMATISM, and ACUVUE® OASYS® for PRESBYOPIA.

54.     In a June 24, 2014 letter, J&J acknowledged the coordinated effort to implement its PFPs and thanked ECPs for their "open and candid responses," which allowed J&J "to define our strategy and implement the changes and actions you told us were needed."   Additionally, J&J has already made repeated anticompetitive changes to its PFPs based on input from ECPs.  *See Costco Wholesale Corp. v. Johnson & Johnson Vision Care, Inc.*, No. 3:15-cv-00941 (N.D. Cal.) (Dkt. No. 1) at ¶¶ 52 and 58 (hereinafter, the "Costco Complaint").

55.     The Manufacturer Defendants needed the agreement of their distributors, which it knows represent many retailers, to implement and enforce the PFPs and to avoid the PFPs being undercut by interbrand competition at the wholesale level.

56.     The coordinated effort between the Manufacturer Defendants and their distributors, including ABB, is clear from the face of J&J's PFPs:

> Under this policy, [J&J] and its authorized distributors [such as ABB] will cease to supply [PFP] products to any reseller who advertises or sells [PFP] products to patients at a price below the [PFP] price . . . ."

57.     ABB is actively encouraging retailers to utilize PFPs as a way to maximize revenue.  ABB Concise's "Profit Advisor" publication directs and informs ECPs on how to increase revenues and charge above PFP prices.

58.     The Defendants' conspiracy was successful.  After the coordinated implementation of the PFPs, prices for Contact Lenses increased dramatically.  For example, as

demonstrated in Figure 4 below, the price increases for some of J&J's lines of Contact Lenses range from approximately 75 to nearly 200%.

**Figure 4**

| Historical Price Comparison | | | | | |
|---|---|---|---|---|---|
| Manufacturer | Contact Lens | Old Price* | UPP Price | Price Change ($) | Price Change (%) |
| J&J | 1-DAY ACUVUE MOIST (30 lenses) | $13.80 | $33.00 | $19.20 | 139% |
| J&J | 1-DAY ACUVUE MOIST (90 lenses) | $36.49 | $63.50 | $27.01 | 74% |
| J&J | 1-DAY ACUVUE MOIST for ASTIGMATISM (30 lenses) | $18.24 | $34.50 | $16.26 | 89% |
| J&J | 1-DAY ACUVUE TRUEYE (90 lenses) | $47.74 | $82.50 | $34.76 | 73% |
| J&J | ACUVUE OASYS with HYDRACLEAR PLUS (12 lenses) | $22.68 | $67.50 | $44.82 | 198% |
| J&J | ACUVUE OASYS with HYDRACLEAR PLUS (24 lenses) | $44.23 | $110.00 | $65.77 | 149% |
| J&J | ACUVUE OASYS for ASTIGMATISM (6 lenses) | $21.74 | $40.00 | $18.26 | 84% |
| J&J | ACUVUE OASYS for PRESBYOPIA (6 lenses) | $22.96 | $40.00 | $17.04 | 74% |
| | **Average** | **$28.49** | **$58.88** | **$30.39** | **107%** |
| | **Max.** | | | **$65.77** | **198%** |
| | **Min.** | | | **$16.26** | **73%** |

Notes:
* Old prices are the lowest online price after applying coupons and mail-in rebates, Dec 2013.
Source: http://www.stopupp.org/#price-changes

59.     The Manufacturer Defendants and ABB therefore share a conscious commitment to a common scheme designed to achieve an unlawful objective.

**B.     The United States Contact Lens Market Structure and Characteristics Support the Existence of a Conspiracy**

60.     The relevant product market for purposes of this Complaint is the Contact Lens market.  The relevant geographical market is the United States.  This is the market analyzed in the 2004 and 2005 FTC Reports.

61.     The structure and other characteristics of the market for Contact Lenses in the United States are conducive to a price-fixing agreement among market participants and have made collusion particularly attractive.

62.     Specifically, the Contact Lens market: (1) is highly concentrated; (2) has high barriers to entry; (3) has inelasticity of demand; (4) is highly homogenized; (5) has abundant

opportunities for Defendants to meet and conspire; and (6) is comprised of participants who have motives to conspire.  In addition, Defendants are each engaging in conduct that is against each of their individual economic self-interest and have implemented PFPs that represent a drastic shift in the way Contact Lenses are priced and sold.

### 1.    The Market for Contact Lenses is Highly Concentrated

63.    The Contact Lens market is highly concentrated. Collectively, the four Manufacturer Defendants control 97% of the United States Contact Lens market, as illustrated in Figure 5 below.

**Figure 5**



64.    The Manufacturer Defendants' collective market share is broken down as follows: J&J controls 35.3% market share; Alcon controls 30.6% market share; CooperVision controls 23.9% market share; and B&L controls 7.2% market share.  The Manufacturer Defendants' market share is depicted in Figure 6 below.

**Figure 6**



**2.      The Market for Contact Lenses Has High Barriers to Entry**

65.     Under basic economic principles, a collusive arrangement that raises product prices above competitive levels would attract new entrants seeking to benefit from the supra-competitive pricing. When, however, there are significant barriers to entry, new entrants are much less likely to enter the market.   Thus, barriers to entry foster the formation and maintenance of a monopoly.[6]

66.     Significant barriers preclude, reduce, and/or make it more difficult for competitors to enter the Contact Lens market.  To develop and manufacture Contact Lenses takes years and requires complex technology, industry expertise, and skilled labor.  Designing Contact Lenses also requires substantial research and development costs.

---

[6] The exclusive possession or control of the supply or trade in a commodity or service.

67.     Ultimately marketing lenses to consumers requires a manufacturer to obtain patents and necessary regulatory approvals.

68.     Furthermore, regulations governing the sale of Contact Lenses require that patients obtain a prescription from an eye care professional for a particular line of Contact Lenses.  A potential Contact Lens manufacturer would incur substantial costs marketing its product to ECPs and establishing a sophisticated distribution network to reach the professionals and consumers.

**3.     The Demand for Contact Lenses is Inelastic**

69.     "Elasticity" is an economics term used to describe the sensitivity of supply and demand relative to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and are forced to continue to purchase the product at an increased price.

70.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits as customers purchase substitute products or decline to buy altogether. Inelastic demand is a market characteristic that fosters collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

71.     Demand for Contact Lenses is highly inelastic.  The requirement that ECPs must prescribe the brand and type of Contact Lens a consumer can wear causes there to be no cross

elasticity of demand[7] with other Contact Lenses and leaves consumers unable to constrain market abuses.

72.     A small, non-transitory increase in the price for a prescribed Contact Lens would not cause Contact Lens consumers to switch to glasses or another product or service to correct their vision in significant enough numbers to overcome the price increase.  Similarly, a small, non-transitory price increase would not cause Contact Lens distributors or retailers to change their activities sufficiently to make such a price increase unprofitable to a manufacturer with market power.

73.     There are no substitutes for a Contact Lens consumer's prescribed brand of Contact Lenses.  As indicated by the American Antitrust Institute, "[t]he law does not permit the consumer to substitute another brand for the prescribed brand . . . generic equivalents cannot be obtained for branded contact lenses."[8]  There is simply no alternative for consumers other than branded Contact Lenses, such as those sold by the Manufacturer Defendants.

### 4.     Contact Lenses Are Highly Homogeneous

74.     As admitted by Murphy of Alcon, Contact Lenses are a commodity-like product. When products or services offered by various suppliers are viewed as interchangeable by purchasers, it is easier for suppliers to unlawfully agree on the price for the product or service in

---

[7] In economics, the cross elasticity of demand (or cross-price elasticity of demand) measures the responsiveness of the demand for a good to a change in the price of another good. It is measured as the percentage change in demand for the first good that occurs in response to a percentage change in price of the second good.

[8] American Antitrust Institute, Letter to the FTC and DOJ (Oct. 24, 2014) at 2.

question, making it easier to effectively police the collusively set prices. This allows for the formation and sustainability of an unlawful cartel.

75.    Given the unique regulatory nature of the Contact Lens industry, a consumer may only purchase the brand of Contact Lens prescribed by his or her eye care professional.

76.    Where different types of retailers (*i.e.*., independent eye care professional retailers, big-box stores, or internet retailers) offer the particular brand prescribed to a consumer, the consumer will make his or her purchase decision based primarily on price. The core considerations for a purchaser are where, when, and how much.[9]

77.    Quite simply, this commoditization and interchangeability of Contact Lenses facilitated Defendants' conspiracy by making price coordination much simpler. That is, consumers are not able to choose from numerous distinct Contact Lenses with varying characteristics.

**5.    Defendants Had Ample Opportunities to Meet and Conspire**

78.    Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy.

79.    For example, some Manufacturer Defendants were members of the Contact Lens Manufacturers' Association ("CLMA"). The CLMA hosts an annual meeting, publishes bi-weekly presidential updates to its members, and regularly publishes a newsletter.

---

[9] http://www-rohan.sdsu.edu/~renglish/370/notes/chapt05/.

80.     Additionally, the Manufacturer Defendants are the only members of the Contact Lens Institute ("CLI").   According to the CLI's website, it was created to "represent[] the interests of its members . . . ."

81.     CLI has no members other than the Manufacturer Defendants.   Its board of directors consists of one executive from each of the Manufacturer Defendants: Angelini of J&J is the Chair; Andrew Sedgwick, Vice-President of Global Commercial Strategy & Business Development for CooperVision, is the Vice Chair; Richard Weisbarth, Vice-President of Professional Affairs for Alcon, is the Treasurer; and Joseph Barr, Vice-President of Clinical and Medical Affairs for B&L, is the Director.

82.     Through CLI, the Manufacturer Defendants exchanged information. According to CLI's website:

> The members of the CLI, together with other participating companies participate in a quarterly statistical program to track manufacturer shipment data of Contact Lens and Lens Care products which is managed by Veris Consulting ['Veris']. The program's objective is to provide participants with accurate and timely consolidated market data. . . . . Each participating company in the CLI Statistical Program has a representative on the CLI Global Statistical Task Force.

83.     According to Veris' website, the program established by it for the CLI "track[s] sales at a detailed level worldwide" and "is more valuable than other sources of market data because sales are reported directly from manufacturers."   Veris states that its work for the CLI "is the only program where the data is reviewed annually by Veris to ensure accuracy. Veris implemented this internal review process to reassure participants that they could be confident in the data."   Indeed, Veris requests that "the finance department at each manufacturer's headquarters . . . . [pull sales information and revenue data] directly from their internal system at the model, or SKU level."   The resulting low margin of error "is extremely important to

participants since they use this data for strategic planning" and is reported to the Manufacturer Defendants on a quarterly and annual basis. According to its website, Karen Eftekari, the person at Veris who is the Senior Manager for this work, "also works with member companies [of CLI] such as Johnson & Johnson and Bausch & Lomb performing high-level data analysis and designing custom reporting tools and dashboards."

84.     As members of these industry associations, the Manufacturer Defendants had regular opportunities to meet, exchange information, and signal marketing intentions to one another.

### 6.     Defendants Had Motives to Conspire

85.     Each Manufacturer Defendant had a motive to maintain high retail prices for Contact Lenses.  The Manufacturer Defendants shared the concern that if retailers charged low prices, it would put pressure on them to lower their wholesale prices.

86.     Additionally, Manufacturer Defendants were motivated to keep their ECPs – the largest retail channel – satisfied so they would prescribe the Manufacturer Defendants' Contact Lenses.  Keeping the ECPs satisfied meant keeping retail prices high.

87.     ABB, which is the largest distributor of the Manufacturer Defendants' Contact Lenses in the United States and sells their Contact Lenses to two-thirds of ECPs, has stated that it "worked with" the Manufacturer Defendants to develop and implement the PFPs.  ABB served as the "hub" in a "hub-and-spoke" conspiracy and communicated with each Manufacturer Defendant to facilitate the industry shift to implement PFPs.

### 7.     Defendants' Actions Are Against Each of Their Independent Economic Self-Interest

88.     Manufacturer Defendants' acts in implementing their PFPs were contrary to their independent economic self-interest.

89.     Notably, during an analyst presentation on September 11, 2014, CooperVision admitted that the "Potential Downsides/Challenges" of adopting PFPs policies included: (a) "Enforcement can be challenging"; (b) "Consumer activism may generate legislative backlash and negative public perceptions"; and (c) "May alienate larger customers who want greater pricing freedom and cross marketing." Despite these concerns, CooperVision went forward with implementing a new PFP on its Clariti line of Contact Lenses.

90.     The Manufacturer Defendants also implemented the PFPs despite the consequential declining sales growth for 2014. According to an industry analyst, U.S. Contact Lens sales grew a mere 2% through the third quarter of 2014.

91.     Additionally, given the significant buying power in the Contact Lens Market possessed by discount retailers, it would have been against each Manufacturer Defendant's economic self-interest to unilaterally implement PFPs without assurance that its competitors would follow suit. Thus, if only some Manufacturer Defendants implemented PFPs, discount retailers likely would have switched their purchases to another Manufacturer Defendant without PFPs in place.

92.     As a case in point, after three of the four Manufacturer Defendants implemented their PFPs, Costco notified its customers of the PFPs and urged them to switch Contact Lens brands to the remaining Manufacturer Defendant, CooperVision. But, soon thereafter, CooperVision followed suit and implemented its PFPs on its Clariti line.

## 8.     The Manufacturer Defendants' PFPs Were a Sudden and Drastic Shift in the Way Contact Lenses Are Priced and Sold

93.     Before June of 2013, none of the Manufacturer Defendants had price floors in place such as those implemented through the PFPs. Subsequent to Alcon's implementation of its first PFP, all of its major competitors followed suit over the next 15 months.

94.     Alvarez of ABB acknowledged the "Fundamental Shift" the PFPs represented in the market for Contact Lenses.

**C.    There is No Legitimate Business Justification for Defendants' Concerted Price Floor Policies**

95.     Defendants cannot justify their PFPs as legitimate business decisions and any purported pro-competitive justification is pretextual.

96.     Free-riding[10] by retailers is not at issue since PFPs do not impact fitting fees charged by ECPs that are necessary for patients to receive their contact lens prescriptions.  Even if patients attempt to have their prescriptions filled by a different retailer, the eye care professional has already been compensated through its fitting fee.

97.     Additionally, the PFPs do not require investment by retailers by way of services or promotional efforts to improve care to patients or aid the manufacturer's position versus rivals.  Retailers who are not ECPs are unable to influence the brand of contact lens prescribed to consumers, and thus have no incentive to participate in promotional programs.  PFPs, however, do incentivize ECPs to prescribe certain lenses based on financial motivations.

98.     The Manufacturer Defendants have also attempted to justify the PFPs as a way to protect consumers from injury by buying Contact Lenses from substandard retailers.  However, representatives of the Manufacturer Defendants, such as Carol Alexander, a Director of Professional Affairs at J&J, stated during a Utah Senate Business & Labor Committee hearing

---

[10] Free-riding is an economic term used to describe the occurrence when those who benefit from resources, goods, or services do not pay for them, which results in either an under-provision of those goods or services, or in an overuse or degradation of a common property resource.

that she could not identify any instance of this type of harm occurring.  She then admitted that the adoption of J&J's PFPs was not motivated by concerns about harm to patients.

**D.     The Defendants Are Recidivist Violators of the Antitrust Laws**

99.     This is not the first time the Manufacturer Defendants have been accused of conspiring to unlawfully suppress competition in the market for Contact Lenses.

100.     In 1996, Attorneys General of 32 states, along with consumers, brought antitrust lawsuits against B&L, J&J, CIBA Vision (Alcon's predecessor).  *Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524 (M.D. Fla. 1996).  These lawsuits alleged that the Contact Lens manufacturers and the AOA (a trade association of ECPs) "conspired among themselves . . . to restrict the supply of replacement contact lenses to alternative channels of distribution."  The plaintiffs also alleged that the manufacturers engaged in an unlawful group boycott by restricting wholesale sales to "alternative suppliers" (*e.g.*, mail order houses and pharmacies), and that but-for this conspiracy, the plaintiffs would have paid lower prices for Contact Lenses.  *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030, 2001 WL 493244  (M.D. Fla. Feb. 8, 2001).

101.     Following the denial of summary judgment to the defendants, the cases settled after several weeks of trial and the challenged practices ceased.  Under the settlement, B&L agreed to pay $8 million and guaranteed it would distribute at least $9.5 million worth of benefits, and agreed to sell their Contact Lenses through alternative channels of distribution on a non-discriminatory basis.  J&J agreed to pay $25 million into the settlement fund, guaranteed it would distribute $30 million in benefits, agreed to pay up to $5 million to former J&J Contact Lens wearers, and agreed to sell its Contact Lenses through alternative channels of distribution on a non-discriminatory basis.  AOA agreed to pay $750,000 and agreed to not: (i) restrict where

consumers could obtain their replacement Contact Lenses; (ii) oppose the release of Contact Lens prescriptions; and (iii) make claims that eye health was impacted by the retailer from which the Contact Lenses were purchased.

102.    While the settlement resolved issues of discriminatory conduct by B&L, J&J, and Alcon's predecessor, other manufactures continued these anticompetitive practices.   This conduct led to an investigation by the U.S. government.  On September 15, 2006, a hearing was held by the Commerce, Trade and Consumer Protection Subcommittee of the House Energy and Commerce Committee entitled *Contact Lens Sales: Is Market Regulation the Prescription?* After this hearing, the manufacturer who most visibly engaged in restrictive distribution practices abandoned its policies, effectively mooting the need for legislative action.

103.    In addition to U.S. investigations and litigation, J&J, along with other Contact Lens manufacturers, have been accused of restricting competition and stabilizing prices in other countries.

104.    In 2009, Germany's Federal Cartel Office fined Contact Lens manufacturers, including CIBA Vision (Alcon's predecessor), for pressuring resellers to follow recommended resale prices, among other practices.

105.    In May 2014, China's National Development and Reform Commission ("NDRC") found that Manufacturer Defendants J&J and B&L's PFPs, among other practices, violated China's Anti-Monopoly Law and fined them 3.6 million Yuan and 3.7 million Yuan, respectively.

## CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons in the United States who indirectly purchased Contact Lenses sold by any of the Manufacturer Defendants, or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the period from and including June 1, 2013 through such time as the anticompetitive effects of Defendants' conduct cease.

107. Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the states listed below (the "Indirect Purchaser States")[11] on behalf of the following class (the "Damages Class"):

> All persons and entities in the Indirect Purchaser States who indirectly purchased Contact Lenses sold by any of the Manufacturer Defendants, or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

108. The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Contact Lenses directly.

109. While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are (at least) thousands of members in each Class.

---

[11] The Indirect Purchaser States include Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.

110.    Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Contact Lenses;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Count;

(e)    Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Counts;

(f)    Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Count;

(g)    Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

(h)    The effect of the alleged conspiracy on the prices of Contact Lenses sold in the United States during the Class Period;

(i)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(j)     The appropriate class-wide measure of damages for the Damages Class.

111.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Contact Lenses purchased indirectly from the Defendants and/or their co-conspirators.

112.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

113.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

114.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

115.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY

116.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Contact Lenses;

(b)     The prices of Contact Lenses have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)     Indirect purchasers of Contact Lenses have been deprived of free and open competition; and

(d)     Indirect purchasers of Contact Lenses paid artificially inflated prices.

117.     During the Class Period, Plaintiff and the members of the Classes paid supra-competitive prices for Contact Lenses.  Those overcharges have unjustly enriched Defendants.

118.     The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to set a price floor to thereby raise, fix, or stabilize the price of Contact Lenses and, as a direct and foreseeable result, the price of Contact Lenses.

119.     The precise amount of the overcharge impacting the prices of Contact Lenses paid by consumers can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution.  Thus, the economic harm to Plaintiff and the members of the Classes can be quantified.

120.     By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiff and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Contact Lenses than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## FIRST COUNT
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

121.     Plaintiff repeats the allegations set forth above as if fully set forth herein.

122.     Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

123.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

124.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to establish a price floor and artificially fix, raise, stabilize, and control prices for Contact Lenses, thereby creating anticompetitive effects.

125.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for Contact Lenses.

126.     As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased Contact Lenses have been harmed by being forced to pay inflated, supra-competitive prices for Contact Lenses.

127.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

128.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for Contact Lenses has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for Contact Lenses provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Plaintiff and members of the Nationwide Class who purchased Contact Lenses indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

129.    Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Contact Lenses purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

130.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

131.    Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND COUNT
### Violation of State Antitrust Statutes
### (on behalf of Plaintiff and the Damages Class)

132.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

133.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Contact Lenses in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

134.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Contact Lenses and to allocate customers for Contact Lenses in the United States.

135.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Contact Lenses at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Contact Lenses provided in the United States; and

(b)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

136.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of Contact Lenses.

137.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

138.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) price competition for Contact Lenses was restrained, suppressed, and eliminated throughout Arizona; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.

Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of Contact Lenses at supra-competitive levels.

(b)      The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Contact Lenses.

(c)      For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and creating a price floor, fixing, raising, and stabilizing the price of Contact Lenses.

(d)      The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) price competition for Contact Lenses has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Contact Lenses  provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Contact Lenses directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for Contact Lenses than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages

Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Contact Lenses that were shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Contact Lenses in the District of Columbia that were shipped by Defendants or their co-conspirators, paid supra-competitive, artificially inflated prices for Contact Lenses, including in the District of Columbia.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*  Accordingly,

Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

141.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

142.    Defendants' unlawful conduct had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Contact Lenses.

143.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

144.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

145.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

146.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq.*

147.    Defendants' combinations or conspiracies had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Illinois; (2)

Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Contact Lenses.

148.    During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

149.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

151.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

152.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Maine; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

153.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

154.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

155.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

156.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

157.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

158.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

159.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

160.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout New York; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses that were higher than they would have been absent the Defendants' illegal acts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.*  The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

161.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Contact Lens prices were raised, fixed, maintained and stabilized at

artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

162.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

163.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

164.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

165.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

166.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Utah; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of

free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

167.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

168.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Accordingly, Plaintiff and

members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

169.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Contact Lens prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

170.    Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiff and members of the Damages Class have paid more for Contact Lenses than they otherwise would have paid in the absence of Defendants' unlawful

conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

171.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiff and the members of the Damages Class.

172.    Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD COUNT
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

173.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

174.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

175.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et. seq.*

176.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Contact Lenses were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

177.    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

178.    Defendants' unlawful conduct had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

179.    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

180.    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

181.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

182.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)    During the Class Period, Defendants manufactured, marketed, sold, or distributed Contact Lenses in California, and committed and continue to commit acts of unfair

competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)    The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)    Defendants' acts or practices are unfair to purchasers of  Contact Lenses in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for Contact Lenses.  Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

183.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive

levels, the prices at which Contact Lenses were sold, distributed or obtained in the District of Columbia

(b)     The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.  Plaintiff was not aware of Defendants' price-fixing conspiracy and has therefore unaware that he was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Contact Lenses.  Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price.  Moreover, Plaintiff lacked any meaningful choice in purchasing Contact Lenses because he was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges.  Defendants' conduct with regard to sales of Contact Lenses, including their illegal conspiracy to secretly fix the price of Contact Lenses at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for purchasers so that there was a gross disparity between the price paid and the value received for Contact Lenses.

(c)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages

Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(d)     As a direct and proximate result of the Defendants' conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

184.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Florida; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

185.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a)    Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

186.    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1 et seq.

187.    Defendants were engaged in trade or commerce as defined by G.L. 93A. Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Contact Lens were sold, distributed, or obtained in

Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

188.    The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11.

189.    Defendants' unlawful conduct had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

190.    During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers.

191.    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

192.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A, §§ 2, 11, that were knowing or willful, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute, including multiple damages.

193.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)     Missouri Plaintiff and members of the Damages Class purchased Contact Lenses for personal or family purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of Contact Lenses in trade or commerce in a market that includes Missouri.

(c)     Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Contact Lenses were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Contact Lenses.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of Contact Lenses they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Contact Lenses by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of Contact Lenses were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing Contact Lenses at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

194.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*

(a)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Montana; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(b)     During the Class Period, Defendants marketed, sold, or distributed Contact Lenses in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

195.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Contact Lenses were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for Contact Lenses as set forth in N.M.S.A., § 57-12-2E.  Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Contact Lenses.  Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price.  Moreover, Plaintiff lacked any meaningful choice in purchasing Contact Lenses because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges.  Defendants' conduct with regard to sales of Contact Lenses, including their illegal conspiracy to secretly fix the price of Contact Lenses at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Contact Lenses.

(c)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were

deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

196.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Contact Lenses were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     Defendants and their co-conspirators made public statements about the prices of Contact Lenses that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Contact Lenses; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c) Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Contact Lenses were misled to believe that they were paying a fair price for Contact Lenses or the price increases for Contact Lenses were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d) Defendants knew that their unlawful trade practices with respect to pricing Contact Lenses would have an impact on New York consumers and not just the Defendants' direct customers.

(e) Defendants knew that their unlawful trade practices with respect to pricing Contact Lenses would have a broad impact, causing consumer class members who indirectly purchased Contact Lenses to be injured by paying more for Contact Lenses than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f) The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g) Defendants' unlawful conduct had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout New York; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were

deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(h)     During the Class Period, Defendants marketed, sold, or distributed Contact Lenses in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Contact Lenses in New York.

(j)     Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

197.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Contact Lenses were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.

Defendants' public statements concerning the price of Contact Lenses created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(e)     During the Class Period, Defendants marketed, sold, or distributed Contact Lenses in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Contact Lenses in North Carolina.

(g)    Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

198.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)    Members of this Damages Class purchased Contact Lenses for personal, family, or household purposes.

(b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Contact Lenses were sold, distributed, or obtained in Rhode Island.

(c)    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Contact Lenses. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Contact Lens prices were competitive and fair.

(d)    Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(e)      As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(f)      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Contact Lenses, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Contact Lenses at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of Contact Lenses they purchased.

(g)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

199.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

200.   Defendants' combinations or conspiracies had the following effects: (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

201. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

202. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

203. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, et seq., and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

204. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Contact Lenses were sold, distributed, or obtained in Vermont.

(b) Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Contact Lenses. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all

purchasers during the Class Period that Defendants' Contact Lens prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects:  (1) Contact Lens price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Contact Lens prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Contact Lenses.

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Contact Lenses, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Contact Lenses at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

### FOURTH COUNT
**Unjust Enrichment**
**(on behalf of Plaintiff and the Damages Class)**

205.    Plaintiff repeats the allegations set forth above as if fully set forth herein.

206.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on Contact Lenses.

207.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and the members of the Damages Class for Contact Lenses.

208.    Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis

**WHEREFORE**, Plaintiff demands judgment that:

1.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

2.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

3.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.     Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

7. Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8. Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9. Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Respectfully submitted,

Dated: March 27, 2015

Eduardo Palmer, P.A.
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134
Telephone: (305) 476-1100
Facsimile: (305) 476-1300

By: *s/ Eduardo Palmer*
EDUARDO PALMER
Fla. Bar No. 0562548

BY: */s/ John D. Zaremba\**
John D. Zaremba
**ZAREMBA BROWNELL AND BROWN PLLC**
40 Wall Street, 27th Floor
New York, NY 10005
Phone: (212) 380-6700
Fax: (212) 871-6395
jzaremba@zbblaw.com

Brian  Douglas Penny*
**Goldman Scarlato & Penny**
101 East Lancaster Avenue
Wayne, Pennsylvania 19087
(484) 342-0700
bpenny@lawgsp.com

*Counsel for Plaintiff and the Putative
Classes*

*\*(Pro Hac Vice Admission Pending)*